UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL HARRIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:13-CV-2328-SPM |
| | ) |
| JAMES HURLEY, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Michael Harris's ("Petitioner's") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) (Doc. 5). For the following reasons, the petition for a writ of habeas corpus will be denied.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and the victim were roommates who sometimes had a sexual relationship. Resp't Ex. B, at 6. On June 16, 2009, the victim was injured in Petitioner's bedroom. Resp't Ex. A, at 6; Resp't Ex. B, at 4. The victim woke up in Petitioner's bedroom and found Petitioner standing on the other side of the bed holding a baseball bat. Resp't Ex. A, at 6; Resp't Ex B, at 4. The victim told police officers and others that Petitioner had hit her with the baseball bat. Resp't Ex. A, at 7; Resp't Ex. D, at 5.

Petitioner testified at trial that he had gone to bed alone on the night in question and had locked his door before going to bed. Resp't Ex. B, at 7; Resp't Ex. D, at 6. He testified that he was woken up by a noise, thought there was an intruder in his room, and started swinging his left

1

hand. Resp't Ex. A, at 6; Resp't Ex. B, at 7; Resp't Ex. D, at 6. He testified that he struck the victim before he realized who it was. Resp't Ex. B, at 7; Resp't Ex. A, at 6. Although he acknowledged striking the victim with his hands, he denied using a bat. Resp't Ex. A, at 6.

After a bench trial, Petitioner was found guilty of domestic assault in the first degree and armed criminal action. Resp't Ex. E, at 3. Petitioner was sentenced to twelve years for the domestic assault count and five years for the armed criminal action count, to be served concurrently. *Id*. at 3-4.

In his direct appeal, Petitioner asserted a single claim: that the trial court had erred in denying his motion to suppress evidence of the baseball bat on the ground that it was the fruit of an unlawful search of his home. Resp't Ex. A, at 9. The Missouri Court of Appeals affirmed the trial court's denial of the motion to suppress, finding that Petitioner had affirmatively waived review of the issue because defense counsel had expressly stated that he had "no objection" to the admission of the bat. Resp't Ex. C, at 4-5.

In Petitioner's amended motion for post-conviction relief, Petitioner asserted four claims of ineffective counsel, and the motion court denied each claim without an evidentiary hearing. Resp't Ex. E, at 6-9. On appeal, Petitioner presented only two of the claims: (1) ineffective assistance of trial counsel based on trial counsel's failure to show Petitioner color copies of photographs of the victim's injuries, a failure that led Petitioner to underestimate the State's case and to proceed to trial instead of accepting a plea offer; and (2) ineffective assistance of trial counsel based on trial counsel's failure to ask Petitioner on direct examination how the victim could have broken into his bedroom. Resp't Ex. D, at 13-14. The Missouri Court of Appeals affirmed the decision of the motion court on both claims. Resp't Ex. G at 3-5.

On November 19, 2013, Petitioner filed a *pro se* petition in the instant action. In the Petition and accompanying brief in support, Petitioner asserts three grounds for relief: (1) that the State courts violated his rights under the Fourth Amendment by denying his motion to suppress the baseball bat and permitting the bat to be admitted into evidence; (2) that his trial counsel was ineffective because of her failure to show Petitioner color copies of photographs of the victim's injuries, a failure that led Petitioner to underestimate the State's case and proceed to trial instead of accepting a plea offer; and (3) that his trial counsel was ineffective based her failure to ask Petitioner on direct examination how the victim could have entered Petitioner's bedroom through a locked door.

## II.   LEGAL STANDARD

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established

3

Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### III. DISCUSSION

#### A. Ground One: Fourth Amendment Violation

In Ground One, Petitioner asserts that the state courts violated his rights under the Fourth Amendment by denying his motion to suppress the baseball bat and permitting the bat to be admitted into evidence, because the bat was the fruit of an illegal search and seizure. Fourth Amendment claims are not cognizable in federal habeas proceedings, unless the petitioner did not have a full and fair opportunity to litigate such claims in state proceedings. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Chavez v. Weber*, 497 F.3d 796, 801-02 (8th Cir. 2007). A Fourth

4

Amendment claim is unreviewable by a federal habeas court under *Stone* unless either (1) "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim," or (2) "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart,* 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc). *Accord Moore v. Sachse*, 421 F. Supp. 2d 1209, 1212 (E.D. Mo. 2006).

Petitioner cannot satisfy either prong of this test. The record shows that the state provided a procedure for litigating Petitioner's Fourth Amendment claims, and there is no indication in the record of any breakdown in the system. Indeed, Petitioner did pursue his Fourth Amendment claims in the state courts. At trial, Petitioner moved to suppress the evidence of the bat, a hearing was held at which witnesses testified, and the trial court denied the motion. *See* Resp't Ex. E, at 3, 7. Petitioner raised the issue of the denial of the motion to suppress and the admission of the bat in his direct appeal, and the Missouri Court of Appeals found that Petitioner had affirmatively waived the issue, because his counsel had stated that it had "no objection" to the admission of the bat. *See* Resp't Ex. C, at 4. In his motion for post-conviction relief, Petitioner argued that his trial counsel was ineffective for failing to object to the admission of the bat, and the motion court found that argument without merit. Resp't Ex. A, at 7-8. It reasoned, *inter alia*, that "these issues were fully adjudicated in an evidentiary Motion to Suppress which was heard on the record" and that "there were exigent circumstances which allowed the officers to search [Petitioner's] home immediately after interviewing the victim." *Id.* Although Petitioner did not reassert this claim on appeal, there is no indication in the record that he did not have the opportunity to do so.

Because Petitioner has failed to demonstrate that he did not have the opportunity to fully and fairly litigate his Fourth Amendment claim, Ground One is not cognizable in a federal habeas corpus hearing and will be denied.

### B. Ground Two: Ineffective Assistance of Trial Counsel—Failure to Show Color Photographs to Petitioner

In Ground Two, Petitioner asserts that his trial counsel was ineffective for failure to show Petitioner color photographs of the injuries suffered by the victim, which presented the victim's injuries in a more "shocking" light than did the black-and-white versions of the photographs that were shown to Petitioner. Petitioner asserts that the State offered him a plea deal and that he discussed the plea deal with his trial counsel and rejected it. He contends that had his counsel shown him the color photos, he would have accepted the plea offer and would have received a more lenient sentence than the twelve-year sentence he was given.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Missouri Court of Appeals addressed this claim on the merits and found that it failed because Petitioner could not show prejudice from the allegedly ineffective assistance of counsel. It stated:

> The motion court denied relief without an evidentiary hearing. Although the court cited several reasons, one is compelling and dispositive. Specifically, the court found that the record refuted [Petitioner's] claim that he could have obtained a plea bargain dismissing the ACA charge and reducing the assault charge. The record supports this finding. Counsel deliberately created a record regarding plea offers. That record demonstrates that the State's best offer was 15 years, and [Petitioner] expressly prohibited counsel from attempting to negotiate a more lenient recommendation. [Petitioner] confirmed this under oath, both before trial and during sentencing. ("That's why I never wanted to negotiate. I wanted the truth to come out.") This record squarely refutes [Petitioner's] claims that he would have avoided trial and accepted a plea bargain, and that he could have received a more favorable arrangement.

Resp't Ex. G, at 4-5 (footnote omitted).

Petitioner does not dispute the state court's finding that Petitioner's counsel created a record regarding plea offers and that the record created in state court demonstrated that the State's best offer was 15 years. Where this Court is reviewing a claim that was adjudicated on

7

the merits by the State court pursuant to 28 U.S.C. § 2254(d), this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Based on that record, it was entirely reasonable for the state court to find that Petitioner could not establish the prejudice prong of *Strickland*. If the State's best offer was 15 years, and Petitioner was ultimately sentenced to 12 years, he was not prejudiced by his counsel's failure to show him evidence that might have motivated him to take a plea offer.

Petitioner suggests that the Missouri Court of Appeals' decision was contrary to the United States Supreme Court's decision *Missouri v. Frye*, 566 U.S. 133 (2012). However, *Frye* is inapposite. In *Frye*, the record developed in state court showed that the prosecutor had communicated a plea offer to the defendant's counsel, and that the defendant's counsel had not informed the defendant of that offer. *Id.* at 138-39. The Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. *Frye* did not address the circumstances here, wherein the state court record contained no evidence of a favorable plea offer that was not communicated to Petitioner.

Petitioner claims that the motion court should have held an evidentiary hearing to develop evidence that he was, in fact, offered a better plea deal than the one discussed in the state court record. However, it is well-established that a claim based on the state court's failure to provide an evidentiary hearing during post-conviction proceedings is not cognizable in a federal habeas proceeding. *See Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990) ("Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a

8

constitutional issue cognizable in a federal habeas petition."); *Walker v. Griffith*, No. 4:13-CV-182-JAR, 2016 WL 630986, at *5 (E.D. Mo. Feb. 16, 2016) (rejecting a petitioner's claim that the motion court erred in denying his motion for post-conviction relief without a hearing; stating, "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, errors or defects in a state post-conviction proceeding do not raise a constitutional issue cognizable in a federal habeas petition."); *Moore v. Steele*, No. 4:12-CV-1174-CDP, 2013 WL 3092186, at *5 (E.D. Mo. June 18, 2013) (rejecting a petitioner's claim that he was improperly denied a hearing on his post-conviction motion; stating, "[t]here is no federal constitutional or statutory right to a hearing on a post-conviction motion, so [the petitioner's] claim is not cognizable at this stage of the case."). In addition, to the extent that Petitioner's claim is that the motion court erred under Missouri law by not providing him with an evidentiary hearing, such a claim is not cognizable for purposes of federal habeas. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[F]ederal habeas relief does not lie for errors of state law.") (quotation marks omitted); *Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas.").

For all of the above reasons, Petitioner is not entitled to relief on Ground Two, and Ground Two will be denied.

### C. Ground Three: Ineffective Assistance of Counsel—Failure to Ask How the Victim Could Have Entered the Bedroom Through a Locked Door

In Ground Three, Petitioner alleges that his trial counsel was ineffective for failing to ask him how the victim could have entered his bedroom through a locked door. Petitioner's testimony at trial was that he had gone to bed alone and locked the door to his bedroom, and that when he heard a person in his room, be believed it was an intruder and did not realize that it was the victim. During closing argument, the prosecutor stated, "[I]t is ludicrous about the door being

9

locked and the strangers in the house." *Id.* The prosecutor also argued, "None of what he says makes sense. He locked the door, but yet there is somebody in there." Resp't Ex. D, at 6. Petitioner argues that had his counsel asked him how the victim could have entered the room through the locked door, he would have stated that the door lock could easily be picked with a butter knife. Petitioner argues that had he testified to this, the court would have found his testimony more credible, and he might not have been convicted. The Missouri Court of Appeals considered this claim and rejected it on the merits. Resp't Ex. G, at 5-6.

As discussed above, to prevail on his ineffective assistance claim, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In addition, because the state court addressed this claim, Petitioner can prevail only by showing that the state court applied *Strickland* to the facts of this case in an objectively unreasonable manner. *See Bell*, 535 at 698-99.

In reviewing this claim, the Missouri Court of Appeals stated:

> For his second point, [Petitioner] contends that his trial counsel was ineffective for failing to ask him how Victim could have entered his bedroom although the door was locked. [Petitioner] claims that, had counsel inquired, [Petitioner] would have answered that the lock was easy to pick, thus explaining Victim's presence in the room and his belief that she was an intruder.
> The motion court rejected [Petitioner]'s claim as conclusory and not warranting relief. It reasoned that the omitted question was objectionable in that it called for speculation, so counsel could not be deemed ineffective for neglecting to ask it. It further reasoned that, even if counsel had posed the question, [Petitioner]'s answer would not have defeated any element of the charges or affected the outcome of the trial. We cannot say that this determination is clearly erroneous.
> Counsel presented effectively the theory that Victim broke into [Petitioner]'s room. Asking how she could have done so might have drawn and

10

> objection and, in any event, the particular fact that a bedroom door lock can be picked with a knife is of limited probative value. Counsel's omission of this detail does not rise to the level of ineffectiveness. Moreover, as [Petitioner] acknowledges, credibility was a key issue. The motion judge was also the trial judge and fact-finder in this bench-tried case. We are not persuaded that the trial court would have viewed the entirety of the evidence differently, resulting in an acquittal, if only it had known that [Petitioner]'s bedroom door was easily breached. The motion court essentially confirmed as much. Point denied.

Resp't Ex. G, at 4-5.

The state court's finding that Petitioner could not satisfy either prong of *Strickland* was not objectively unreasonable. With regard to the first prong, it was not unreasonable for the state court to find no deficient performance. A question about how the victim broke into Petitioner's room would have called for speculation, as Petitioner had no personal knowledge of how she broke into the room. Moreover, the fact that this particular lock *could* be picked with a butter knife is of very little probative value. Petitioner's story that he went to bed in a locked bedroom, heard a noise, and believed there was an intruder in his room becomes only marginally more plausible if it is known that the bedroom door's locked might be easily picked. It was not unreasonable for the Missouri Court of Appeals to find that trial counsel's omission of this detail did not rise to the level of ineffectiveness. With regard to the second prong, similarly, the Missouri Court of Appeals reasonably found that the failure to elicit this marginally relevant testimony did not create a reasonable likelihood that the outcome of the trial would have been different. That conclusion was particularly reasonable in light of the fact that the motion judge——who was also the trial judge and fact-finder in this case—found that the inclusion of this detail would have had no effect on the trial court's ultimate judgment. *See* Resp't Ex. E, at 9.

Petitioner also appears to be claiming that the state court erred by denying him an evidentiary hearing with regard to this claim. As discussed above with respect to Ground Two, however, such a claim is not cognizable in federal habeas proceedings.

11

For the reasons stated above, Ground Three will be denied.

## IV. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2017.